IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | | |
|---|---|---|
| KIMBERLY WALLIS | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | NO. 3:06-cv-03147-RM-CHE |
| | ) | |
| CARGILL MEAT SOLUTIONS | ) | Judge Richard Mills |
| CORPORATION, a Delaware Corporation, | ) | Magistrate Judge Charles H. Evans |
| | ) | |
| Defendant. | ) | |

## DEFENDANT'S ANSWER AND ADDITIONAL DEFENSES

Defendant, Cargill Meat Solutions Corporation (hereinafter, "CMSC"), by and through its attorneys, for its Answer and Additional Defenses to the Complaint filed by Plaintiff, Kimberly Wallis ("Plaintiff"), states as follows:

1. This action is brought to remedy discrimination on the basis of sex based upon sexual harassment, in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. Section 2000e *et seq.* ("Title VII"). This action is also brought to redress violations of the Americans with Disabilities Act of 1990 ("ADA"), specifically, the failure to accommodate in violation of the ADA, 42 U.S.C. Section 12101, *et. seq.*

**ANSWER**: CMSC denies the allegations made and contained in Paragraph No. 1, except to admit that this action purports to bring causes of action under Title VII of the Civil Rights Act of 1964 and the Americans with Disabilities Act of 1990.

2. Jurisdiction of this Court is founded upon 28 U.S.C. §§ 1331 and 1343 (1), (2), (3) and (4) and the aforementioned statutory provisions. Injunctive and declaratory relief and damages are sought pursuant to 42 U.S.C. §2000e-5(f) and (g) along with monetary relief for damages.

**ANSWER**: CMSC denies the allegations made and contained in the first sentence of Paragraph No. 2, except to admit that jurisdiction is proper in this Court. CMSC admits the

1

\4108225.2

allegations made and contained in the second sentence of Paragraph No. 2 but denies that Plaintiff is entitled to any such relief.

3. At all times mentioned in the Complaint, the Defendant was an employer and the Plaintiff was an employee under Sections 701(b) & (f) of 42 U.S.C. § 2000e (b) & (f) and 42 U.S.C. § 12111.

**ANSWER**: Admitted.

4. Pursuant to 28 U.S.C. 1391(b), venue is proper within the Springfield Division of the Central District of Illinois because the unlawful practices complained of herein occurred in Cass County, Illinois.

**ANSWER**: CMSC denies the allegations made and contained in Paragraph No. 4, except to admit that venue is proper in this Court.

5. Plaintiff, KIMBERLY WALLIS, filed a charge of discrimination against Defendant CARGILL MEAT SOLUTIONS CORPORATION with the Equal Employment Opportunity Commission ("EEOC") and the Illinois Department of Human Rights on or about December 21, 2005, complaining of the acts of sexual harassment and ADA violations as alleged herein. (Attached hereto and incorporated herein as Exhibit 1 is a true and exact copy of said charge). On or about May 15, 2006, the United States Equal Employment Opportunity Commission notified KIMBERLY WALLIS of her right to institute this action by issuance of a "Notice of Right to Sue" on her charge. (Attached hereto and incorporated herein as Exhibit 2 is a true and exact copy of said Notice).

**ANSWER**: CMSC denies the allegations made and contained in Paragraph No. 5, except to admit that Plaintiff filed a charge of discrimination with the EEOC and the IDHR on or about December 21, 2005 and received a notice of right to sue with respect to that charge on or about May 15, 2006.

6. Plaintiff, KIMBERLY WALLIS, is a female citizen of the United States. She has been employed by CARGILL MEAT SOLUTIONS CORPORATION in Cass County, Illinois, since March 1, 2004. Plaintiff is currently on temporary disability caused by the sexual harassment from her co-worker as alleged further in this Complaint. Plaintiff resides in Virginia, Illinois. At all times relevant hereto, Plaintiff has suffered from the disability of being profoundly deaf and this disability is unable to be corrected. Plaintiff's disability, affected and severely restricted Plaintiff's activities of daily living in that she has been substantially restricted in both home and work activities as follows:

      a.      Work Activities that were restricted:

           1.      She is unable to understand spoken directions and needs to read lips in order to understand directions;

           2.      She is unable to understand explanations and discussions with her Supervisors concerning the investigation and decisions made by Defendant in response to her complaint of sexual harassment.

      b.      Home Activities that are restricted:

           1.      She is profoundly deaf and can only watch television with closed captioned.

           2.      She wears a hearing aid in her left ear and communicates with family, her children and friends by a combination of lip reading, assistance of sign language and speech.

**ANSWER:** CMSC admits the allegations made and contained in the first sentence of Paragraph No. 6. CMSC denies the allegations made and contained in sentences two and three of Paragraph No. 6, except to admit that CMSC employed Plaintiff at its Beardstown, Illinois pork processing facility from March 1, 2004 until on or about December, 2005. CMSC admits the allegations made and contained in the fourth sentence of Paragraph No. 6 on information and belief. CMSC is without information sufficient to confirm or deny the allegations made and contained in the fifth sentence Paragraph No. 6 and therefore denies the same, except to admit that Plaintiff suffers from a hearing impairment of unknown severity. CMSC is without information sufficient to confirm or deny the remaining sentences of Paragraph No. 6 and therefore denies the same, except specifically denies that Plaintiff was unable to communicate verbally with her supervisors.

      7.      Defendant, CARGILL MEAT SOLUTIONS CORPORATION operates a pork processing plant in Cass County, Illinois. At all times relevant hereto, Defendant acted by and through following Managerial Staff:

    A.    Terry Cagle, was a lead man who would be responsible for supervising Plaintiff's work if a line supervisor was not at the scene of the work.

    B.    Fred Ross, was a line supervisor for the line on which Plaintiff worked and was Plaintiff's direct supervisor.

    C.    Scott Thornton was a line supervisor for another line at Plaintiff's place of work.

    D.    Stacy Garcia was a supervisor in training of another line at Plaintiff's place of work.

    E.    Sam (last name unknown) was a supervisor over Fred Ross at Plaintiff's place of work.

    F.    Craig (last name unknown) was a supervisor over Fred Ross at Plaintiffs place of work.

    G.    John Curry was a training instructor who Defendant called in sometimes to serve as a translator for Plaintiff and other deaf employees at Plaintiff's place of work.

**ANSWER:** Admitted.

### ALLEGATIONS COMMON TO ALL COUNTS

1-7.    Plaintiff repeats and realleges paragraphs 1-7 herein with the same force and effect as if fully set forth herein.

**ANSWER**: CMSC hereby incorporates its answers to Paragraph Nos. 1 through 7.

8.    Plaintiff was originally employed by CARGILL MEAT SOLUTIONS CORPORATION, as a transferor of meat products.

**ANSWER**: CMSC denies the allegations made and contained in Paragraph No. 8 and states that it hired Plaintiff into the position of Remove Blade Bone.

9.    Plaintiff was promoted by Defendant to the position of meat skinner in May 2005.

**ANSWER**: CMSC denies the allegations made and contained in Paragraph No. 9 and states that it transferred Plaintiff to the position of Butt Skinner on or about June 28, 2005.

10.    Meat skinners work in teams of three employees processing meat through three high speed cutting machines.

**ANSWER**: CMSC denies the allegations made and contained in Paragraph No. 10, except to admit that Paragraph No. 10 describes generally the job duties of Butt Skinners at CMSC's Beardstown facility.

11. Skinning requires the employees to pass meat into the aforementioned high speed cutting machines. The meat skinner's job is physically demanding and requires a great deal of concentration by the employee. The meat skinner's job is quite dangerous because there are no guards on the high speed cutting machines used by the meat skinners.

**ANSWER**: CMSC admits the allegations made and contained in the first sentence of Paragraph No. 11. CMSC denies the allegations made and contained in the second and third sentences of Paragraph No. 11, except to admit that the butt skinner machine does not contain a guard.

12. Because of the high speed of the processing operation, the meat skinner team members are required to rotate to a different machine every 30 minutes and to take a 15 minute break every hour.

**ANSWER**: CMSC denies the allegations made and contained in Paragraph No. 12, except to admit that butt skinners are expected to rotate machines every 30 minutes and are permitted to take periodic breaks.

13. At all times relevant hereto, Plaintiff performed her job duties as meat skinner in a manner considered acceptable by the Defendant and received positive performance reviews.

**ANSWER**: CMSC admits the allegations made and contained in Paragraph No. 13.

14. In July 2005, Ishmael Rivera ("Rivera") was assigned by Defendant to work with Plaintiff and another employee as a meat skinning team.

**ANSWER**: CMSC denies the allegations made and contained in Paragraph No. 14, except to admit that Rivera and Plaintiff were both first shift Butt Skinners as of July 2, 2005.

15. Beginning on the first day of Ishmael Rivera's assignment to Plaintiff's meat skinning team, and continuing on a daily basis thereafter, Rivera engaged in a

5

\4108225.2

course of the following unwelcome and sexually offensive conduct directed at the Plaintiff because of her sex that was severe and pervasive and unreasonably affected the Plaintiff's ability to perform her job.

A. Rivera made ongoing comments to the Plaintiff that he would be waiting for her in the parking lot before and after work.

B. Rivera consistently told Plaintiff that he knew she wanted him.

C. Rivera would grab her hands when she was working on a meat trimming machine.

D. Rivera told her she had long hair and it was very sexy.

E. When Plaintiff and Rivera would switch positions on the line, Rivera would place his hands on Plaintiffs hips.

F. Rivera told the Plaintiff he could eat pussy very good.

G. Even though employees were prohibited by Defendant from carrying cell phones on the line, Rivera would violate this rule and take photographs of Plaintiff and ask her to look at them.

H. Rivera would tell Plaintiff that she looked good in tight blue jeans.

I. Rivera would tell Plaintiff he would be waiting for her in the break room.

J. If Plaintiff would not pay attention to Rivera or not respond to his remarks, Rivera would grab Plaintiff's hands, or start tossing meat, or refuse to switch machines at the end of 30 minutes which would cause severe emotional and physical distress to Plaintiff because she had to continue cutting and processing the pork for a longer period of time than the job could be safely done.

**ANSWER:** CMSC denies the allegations made and contained in Paragraph No. 15, except to admit that Plaintiff complained to management about Rivera taking a photograph of her and failing to rotate machines at appropriate times.

16. Plaintiff made repeated complaints to the lead man, Terry Cagle, about Rivera's conduct and comments. Mr. Cagle never took any action to correct the situation and stop Rivera from harassing Plaintiff.

**ANSWER**: CMSC denies the allegations made and contained in Paragraph No. 16.

17. After the harassment continued for approximately a month, the Plaintiff contacted Scott Thornton, a supervisor of another line. Mr. Thornton took Plaintiff off her line and escorted her to Fred Ross, her supervisor who was then in the break room. At that time Plaintiff explained in detail Rivera's actions and how it was affecting her ability to perform her job safely. Ross and Thornton discussed the problem. No sign interpreter was provided and Plaintiff was not able to understand completely what the supervisors talked about. Ross told Plaintiff that he would take care of the problem and sent her back to the line. Later that afternoon, Ross called Rivera and Plaintiff together to his office. Ross told Rivera of Plaintiff s complaint and that he was going to write a report. Rivera denied Plaintiff's complaints and started talking quietly with Ross. Again, no sign interpreter was present and Plaintiff could not understand what was being said. Ross told Plaintiff that the harassment would stop.

**ANSWER**: CMSC denies the allegations made and contained in Paragraph No. 17, except to admit that Plaintiff complained to Scott Thornton about Rivera taking a photograph of her, that Thornton referred her complaint to Fred Ross and that Ross addressed the incident, including by disciplining Rivera.

18. Rivera's harassment of Plaintiff did not stop and he continued to make repeated comments similar to those alleged in paragraph 15 above. Plaintiff complained repeatedly to her supervisor, Fred Ross. Finally, sometime in September 2005, another meeting was held attended by Fred Ross and his supervisor, Craig (last name unknown), Rivera and Plaintiff. John Curry attended and attempted to sign and interpret to Plaintiff what the men were discussing. Mr. Curry repeatedly apologized to Plaintiff about his inability to sign quicker. John Curry told Plaintiff he could not keep up with the conversation and could only summarize what was being said by Rivera, Ross or Craig. Ross or Craig told Plaintiff they would pay more attention to what went on and they would watch the line more.

**ANSWER**: CMSC denies the allegations made and contained in the first and second sentences of Paragraph No. 18, except to admit that after Plaintiff complained to management about Rivera failing to properly rotate, a meeting was held among Ross, Rivera, Plaintiff, Juana Soto, Craig Diebold and John Curry to address the issue of rotation and a rotation schedule was established.

19. After the meeting Rivera continued his practice of making harassing comments to Plaintiff, refusing to switch machines on line, grabbing her hand and taking meat out of the line causing her to be distracted.

7

\4108225.2

**ANSWER**: CMSC denies the allegations made and contained in Paragraph No. 19.

20. On September 28, 2005, Rivera continued his practice of making harassing comments and refused to switch positions. Plaintiff refused to look at Rivera. Rivera then became mad because Plaintiff would not acknowledge him and began to throw meat at her. Rivera then refused to switch machines after 30 minutes. No supervisor was on Plaintiff's line so Plaintiff called to a supervisor in training, Stacy Garcia, who started to walk over toward her. Because of Rivera's refusal to switch machines and his other antics, Plaintiff was distracted. All of this commotion and activity distracted Plaintiff and her hand was caught in the cutting machine she operated. Plaintiff lost her thumb and a finger on her left hand when her hand was caught in the machine. The thumb has been reattached but cannot be used.

**ANSWER**: CMSC denies the allegations made and contained in Paragraph No. 20, except to admit that on September 28, 2005 Plaintiff complained to Stacy Garcia that Mr. Rivera was not rotating machines and shortly thereafter suffered an injury when her left hand was caught in the butt skinner machine she was operating.

21. Plaintiff at all times herein was forced to endure a sexually hostile work environment perpetrated by Rivera. Despite repeated complaints by Plaintiff to her and Rivera's supervisors, Defendant took no disciplinary or other action to prevent further harassment by Rivera.

**ANSWER**: CMSC denies the allegations made and contained in Paragraph No. 21.

22. As a direct and proximate result of Defendant's conduct, Plaintiff has lost a finger on her left hand and has been forced to endure severe and prolonged mental anguish, humiliation, embarrassment, extreme damage to her professional and personal reputation, damage to her career opportunities, damage to her physical health and monetary losses associated with her employment all of which have affected seriously the psychological well-being of the Plaintiff.

**ANSWER**: CMSC denies the allegations made and contained in Paragraph No. 22, except to admit that Plaintiff suffered an injury to her left hand on September 28, 2005.

23. Defendant's discriminatory treatment of the Plaintiff as described above has been intentionally taken against the Plaintiff by the Defendant.

**ANSWER**: CMSC denies the allegations made and contained in Paragraph No. 23.

\4108225.2

## COUNT I

1-23. Plaintiff repeats and realleges paragraphs 1-23 with full force and effect as if fully set forth herein.

**ANSWER**: CMSC hereby incorporates its answers to Paragraph Nos. 1 through 23.

24. At all times relevant herein, the Defendant CARGILL MEAT SOLUTIONS CORPORATION acted by and through its employees and agents, Ishmael Rivera, Terry Cagle, Fred Ross and Craig (last name unknown).

**ANSWER**: CMSC denies the allegations made and contained in Paragraph No. 24, except to admit that CMSC acts through its authorized officers and agents.

25. By the above acts, Defendant, CARGILL MEAT SOLUTIONS CORPORATION, has violated Title VII by discriminating against Plaintiff because of her sex by creating an unwelcome sexually hostile work environment that was severe and pervasive and affected the Plaintiff's ability to perform her job and seriously affected the psychological well-being of the Plaintiff.

**ANSWER**: CMSC denies the allegations made and contained in Paragraph No. 25.

26. Defendant's acts have been with malice and reckless disregard for Plaintiff's federally protected civil rights.

**ANSWER**: CMSC denies the allegations made and contained in Paragraph No. 26.

27. Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages as a result of Defendant's discriminatory practices unless and until this Court grants relief.

**ANSWER**: CMSC denies the allegations made and contained in Paragraph No. 27.

## COUNT II

1-27. Plaintiff repeats and realleges paragraphs 1-27 of Count I as and for paragraphs 1-27 of Count II with the same force and effect as if fully set forth herein.

**ANSWER**: CMSC hereby incorporates its answers to Paragraph Nos. 1 through 27.

28. At all times relevant hereto, Plaintiff was profoundly deaf that permanently affected and severely restricted her activities of daily living, including work and home activities all as previously alleged herein.

**ANSWER**: CMSC is without information sufficient to confirm or deny the allegations made and contained in Paragraph No. 28 and therefore denies the same, except to admit that Plaintiff suffers from a hearing impairment of unknown severity.

29. Defendant was aware of the Plaintiff's disability.

**ANSWER**: CMSC denies the allegations made and contained in Paragraph No. 29, except to admit that it knew that Plaintiff suffered from a hearing impairment of unknown severity.

30. From the date of her employment with the Defendant, Plaintiff was fully capable of and could fully perform the essential job junctions of her jobs as transferring product and/or meat skinner.

**ANSWER**: Admitted.

31. Defendant refused to accommodate the Plaintiffs disability and refused to provide the Plaintiff with a qualified translator to assist her in reporting sexual harassment by Ishmael Rivera or assist her in understanding what policies or actions Defendant would take to stop this harassment.

**ANSWER**: CMSC denies the allegations made and contained in Paragraph No. 31.

32. Defendant violated the ADA by refusing to provide the Plaintiff with reasonable accommodation of her disabilities and perceived disabilities in violation of Title VII of the ADA, 42 U.S.C. § 12111, *et seq.*

**ANSWER**: CMSC denies the allegations made and contained in Paragraph No. 32.

33. Defendant's acts have been intentional with malice and reckless disregard for Plaintiff's federally protected civil rights.

**ANSWER**: CMSC denies the allegations made and contained in Paragraph No. 33.

34. Plaintiff is now suffering and will continue to suffer irreparable injury in monetary damages as a result of Defendant's discriminatory practices unless and until this Court grants relief.

**ANSWER**: CMSC denies the allegations made and contained in Paragraph No. 34.

## AFFIRMATIVE AND ADDITIONAL DEFENSES

**First Defense**

Plaintiff's Complaint fails to state a claim upon which relief can be granted.

**Second Defense**

All actions by CMSC with regard to Plaintiff were lawful and made in good faith compliance with applicable provisions of law, rules and regulations, and were not impermissibly based upon any unlawful consideration or otherwise the result of any unlawful motive.

**Third Defense**

Plaintiff is not entitled to recover punitive damages because CMSC did not engage in a discriminatory practice with malice or with reckless indifference toward Plaintiff.

**Fourth Defense**

To the extent Plaintiff suffered any damages, such damages were caused by Plaintiff's own actions or the actions of persons outside of CMSC's control.

**Fifth Defense**

CMSC asserts that any damages awarded herein, for which all liability is denied, are subject to the limits imposed by the Civil Rights Act of 1991, 42 U.S.C. § 1981a.

**Sixth Defense**

To the extent that Plaintiff's claims are based on actions allegedly taken by persons other than CMSC, its agents, or CMSC employees acting outside of the scope of their employment with the company, CMSC is not responsible for such actions.

**Seventh Defense**

To the extent that Plaintiff's claims concern matters occurring more than 300 days before the filing of her charge of discrimination, her claims are barred, in whole or in part, by the applicable statute of limitations and/or by other time limitations imposed by law.

**Eighth Defense**

To the extent that Plaintiff asserts claims outside the scope of her charges of discrimination, those claims are barred by her failure to exhaust administrative remedies.

**Ninth Defense**

To the extent that Plaintiff attempts to recover damages for work-related injuries, Plaintiff's claims are preempted, in whole or in part, by the Illinois' Workers' Compensation Act.

**Tenth Defense**

Plaintiff unreasonably failed to take advantage of CMSC's preventative and corrective measures or to otherwise avoid harm within the meaning of *Faragher v. City of Boca Raton*, 524 U.S. 775 (1998) and *Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742 (1998).

**Eleventh Defense**

Rivera's alleged conduct toward Plaintiff was not sufficiently severe and pervasive so as to create a hostile working environment within the meaning of Title VII.

**Twelfth Defense**

Rivera's alleged conduct toward Plaintiff was not based upon sex so as to be actionable under Title VII.

\4108225.2

**Thirteenth Defense**

Rivera's alleged conduct toward Plaintiff was not unwelcome or subjectively offensive so as to be actionable under Title VII.

**Fourteenth Defense**

The accommodations allegedly requested by Plaintiff were unnecessary and unreasonable.

**Fifteenth Defense**

Plaintiff failed to request workplace accommodations, and her claims regarding CMSC's alleged failure to accommodate her alleged disability are barred by her failure to engage in the interactive process.

**Sixteenth Defense**

CMSC reserves the right to assert any additional or affirmative defense that may become apparent or available during discovery of this matter.

WHEREFORE, Defendant, Cargill Meat Solutions Corporation, respectfully requests that judgment be entered in its favor and against Plaintiff, Kimberly Wallis, that it be awarded all costs and reasonable attorney's fees incurred in the defense of this action and such other and further relief as the Court deems proper.

|  |  |
|---|---|
| Dated:  September 8, 2006 | /s/ Michael R. Phillips<br>MCGUIREWOODS LLP<br>Joel H. Spitz<br>Michael R. Phillips<br>John C. Gardner<br>77 W. Wacker Dr., Suite 4100<br>Chicago, IL 60601<br>(312) 849-8100 (telephone)<br>(312) 849-3690 (fax)<br>jspitz@mcguirewoods.com<br>mphillips@mcguirewoods.com<br>jgardner@mcguirewoods.com |

\4108225.2

## CERTIFICATE OF SERVICE

I hereby certify that on this 8th day of September, 2006, I electronically filed the foregoing *Defendant's Answer and Affirmative Defenses* with the Clerk of the Court using the ECF system which will send notification of such filing to the following:

R Gerald Barris: rgbarris@sorlinglaw.com,bjbiondolino@sorlinglaw.com

John A Kauerauf :jakauerauf@sorlinglaw.com,smranson@sorlinglaw.com

/s/ Michael R. Phillips

MCGUIREWOODS LLP
77 W. Wacker Dr., Suite 4100
Chicago, IL 60601
(312) 849-8100 (telephone)
(312) 849-3690 (fax)
mphillips@mcguirewoods.com