**E-FILED**
Wednesday, 07 February, 2007  03:39:05 PM
Clerk, U.S. District Court, ILCD

**IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION**

| | | |
|---|---|---|
| KIMBERLY WALLIS | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | NO. 3:06-cv-03147-RM-CHE |
| | ) | |
| CARGILL MEAT SOLUTIONS | ) | Judge Richard Mills |
| CORPORATION, a Delaware Corporation, | ) | Magistrate Judge Charles H. Evans |
| | ) | |
| Defendant. | ) | |

**<u>DEFENDANT'S MOTION FOR LEAVE TO AMEND ITS ANSWER</u>**

Defendant, Cargill Meat Solutions Corporation (hereinafter, "CMSC"), by and through its attorneys, McGuireWoods LLP, respectfully moves this Court for leave to amend its Answer and Additional Defenses to assert two additional affirmative defenses.  In support of this Motion, CMSC states as follows:

1.    On or about July 13, 2006, Plaintiff, Kimberly Wallis ("Plaintiff"), filed her Complaint against CMSC.  In the Complaint, Plaintiff alleges that she was subjected to a hostile work environment on the basis of her sex during her employment with CMSC and that this environment caused her harm for which she seeks compensatory and punitive damages.  (#1.)

2.    In addition, Plaintiff alleged that she suffered a work-related injury on September 28, 2005 when "her hand was caught in the cutting machine she operated" as part of her job duties.  *Id*. at ¶ 20.

3.    CMSC timely filed its Answer and Additional Defenses on September 8, 2006. (#8.)

4.    During discovery, CMSC has sought to clarify whether Plaintiff is seeking damages for the physical and emotional injuries she suffered as a result of the September 28,

2005 accident. In particular, CMSC sent Plaintiff an interrogatory in which it inquired whether Plaintiff was "claiming damages in this case for physical or mental injuries relating to the accident that occurred on September 28, 2005" and asked her multiple questions regarding the extent of the damages to which she claims she is entitled at her January 17, 2007 deposition. *See* Plaintiff's Answers to Defendant's First Set of Interrogatories, attached hereto as Exhibit A, at ¶ 12.

5.     Plaintiff's discovery responses and testimony have clarified that she *is* seeking damages for the physical and/or mental injuries she suffered as a result of the September 28, 2005 accident. *See id*.

6.     Accordingly, CMSC seeks an order permitting it to amend its answer to include an additional affirmative defense based upon the doctrine of election of remedies in connection to the revelations noted above. *See Kel-Keef Enterprises, Inc. v. Quality Components Corp.*, 738 N.E.2d 524, 532 (Ill. Ct. App. 2000) (providing that the election of remedies doctrine bars a plaintiff from recovering both of two inconsistent remedies where she has prosecuted one of the remedial rights to judgment); *Hogue v. Sam's Club*, 114 F. Supp. 2d 389, 395 (D. Md. 2000) (holding that a plaintiff was barred by the election of remedies doctrine from pursuing damages under Title VII for injuries for which she had previously obtained worker's compensation benefits). CMSC's Amended Answer and Additional Defenses is attached hereto as Exhibit B.

7.     CMSC further seeks an order to amend its answer to include an affirmative defense providing that Plaintiff cannot recover for damages that are not causally related to the purported hostile work environment about which she complains. *See Shick v. Illinois Department of Human Services*, 307 F.3d 605, 614-15 (7th Cir. 2002) (providing that a Title VII

plaintiff can recover only those damages that are proximately caused by the defendant's illegal behavior).

8.    Under federal law, "a party may amend the party's pleading [after a responsive pleading is filed] only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires." Fed. R. Civ. P. 15(a).  This leave should be given "'[i]n the absence of any apparent or declared reason – such as undue delay, bad faith or dilatory motive on the part of the movant ….'" *Barry Aviation Inc. v. Land O'Lakes Municipal Airport Commission*, 377 F.3d 682, 687 (7th Cir. 2004) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

9.    Because Plaintiff already posseses the evidence that provides the basis for CMSC's proposed election of remedies affirmative defense (evidence regarding her receipt of worker's compensation benefits) and its proposed causation defense (evidence regarding the connection between the alleged harassment and her work-related injury) and therefore will not need to conduct any additional discovery in response to the addition of either defense, and because Plaintiff has assuredly been aware of the damages she seeks and the connection of her work-related injury to the alleged hostile work environment since the date on which she filed her Complaint, Plaintiff will suffer no prejudice if this Court grants CMSC leave to amend its Answer and Additional Defenses and the addition of the defenses will not cause a delay in the resolution of this case.

10.    Plaintiff has no objection to the instant motion.

WHEREFORE, Defendant, Cargill Meat Solutions Corporation, respectfully requests that this Court enter an order granting it leave to amend its Answer and Additional Defenses to assert

two additional affirmative defenses and such other and further relief as the Court deems just and

proper.

Dated:  February 7, 2007                         /s/ Michael R. Phillips_____
                                                 MCGUIREWOODS LLP
                                                 Joel H. Spitz
                                                 Michael R. Phillips
                                                 John C. Gardner
                                                 77 W. Wacker Dr., Suite 4100
                                                 Chicago, IL 60601
                                                 (312) 849-8100 (telephone)
                                                 (312) 849-3690 (fax)
                                                 jspitz@mcguirewoods.com
                                                 mphillips@mcguirewoods.com
                                                 jgardner@mcguirewoods.com

**CERTIFICATE OF SERVICE**

I hereby certify that on this 7th day of February, 2007, I electronically filed the foregoing

***Defendant's Motion for Leave to Amend its Answer*** with the Clerk of the Court using the ECF

system which will send notification of such filing to the following:

R Gerald Barris: rgbarris@sorlinglaw.com,bjbiondolino@sorlinglaw.com

John A Kauerauf :jakauerauf@sorlinglaw.com,smranson@sorlinglaw.com


/s/ Michael R. Phillips_____

MCGUIREWOODS LLP
77 W. Wacker Dr., Suite 4100
Chicago, IL 60601
(312) 849-8100 (telephone)
(312) 849-3690 (fax)
mphillips@mcguirewoods.com


#4415614 (v.1).doc

5

E-FILED
Wednesday, 07 February, 2007  03:39:56 PM
Clerk, U.S. District Court, ILCD

# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | | |
|---|---|---|
| KIMBERLY WALLIS | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | NO. 3:06-cv-03147-RM-CHE |
| | ) | |
| CARGILL MEAT SOLUTIONS | ) | Judge Richard Mills |
| CORPORATION, a Delaware Corporation, | ) | Magistrate Judge Charles H. Evans |
| | ) | |
| Defendant. | ) | |
| | ) | |

## PLAINTIFF'S ANSWERS TO DEFENDANT'S FIRST SET OF INTERROGATORIES

Now Comes Plaintiff, Kim Wallis, by and through its attorneys, Sorling, Northrup,
Hanna, Cullen & Cochran, Ltd., R. Gerald Barris and John Kauerauf, of counsel and pursuant to
Rule 33 of the Federal Rules of Civil Procedure, answers the Defendant's interrogatories as
follows:

## INTERROGATORIES

1.    Identify every person thought to have knowledge of or information relating to any
facts alleged in the Complaint, including, *but not limited to*, knowledge relating to the alleged
sexual harassment and/or sex or disability discrimination against Plaintiff. For each such person,
describe in detail the knowledge or information each person is thought to have.

ANSWER: See Attached List


2.    Identify every person contacted or interviewed in preparation for the prosecution
of this case, state the dates of such contact or interview, and identify every document relating to
this contact or interview.


EXHIBIT
A

ANSWER:    None at this time.  Investigation continues.  Plaintiff reserves the right to supplement

3.    If Plaintiff (or her attorneys) has obtained a written, recorded or oral statement from any person regarding any claims or allegations raised in the Complaint, identify the person from whom the statement was taken; the date the statement was taken; and describe (identify) the contents of the statement.

ANSWER:    None at this time.  Investigation continues.  Plaintiff reserves the right to supplement

4.    Describe in detail each and every lawsuit, administrative claim (including charges of discrimination or retaliation filed with any federal, state, or local agency), or criminal action in which the Plaintiff has been a party or a witness and for each one state the nature of the claim(s) presented, the nature of the involvement, and the disposition of the matter.

ANSWER:

-Illinois Department of Human Rights and EEOC, Charge No. 2006SN1570;
-U.S. District Court Case No. 06-03227:  Wallis v. Townsend Vision, Inc. and Stork Townsend, Inc.;
-U.S. District Court Case No. 06-3147:  Wallis v. Cargill Meat Solutions Corporation;

5.    State the name, address, telephone number and title of each physical and/or mental health care provider (e.g., doctor, psychologist, psychiatrist, therapist, counselor, etc.) whom Plaintiff has consulted or who treated Plaintiff since January 1, 2001 for any medical, physical or mental condition, including, *but not limited to*, emotional distress, emotional pain, suffering, mental anguish, loss of enjoyment of life, stress, anxiety, or any emotional, mental, or stress-related disorder, condition, illness, complaint or problem (or any physical symptoms or condition related thereto).  For each provider, state the medical specialty of the health care

{S0521026.1  11/9/2006 JLD JLD}

provider; the illness, condition, complaint, injury, addiction, or symptoms for which consultation or treatment was sought; the diagnosis made and the prognosis given by the health care provider; the date(s) of each visit to or treatment by the health care provider; and the treatment prescribed by the health care provider.

ANSWER:    See Attached List – Copies of Medical Records are produced in Response To Request For Production and provide dates, complaints, diagnosis and treatments.

6.    Identify each and every doctor, psychologist, therapist, hospital, clinic, counselor, association, or other health care professional or medical facility or entity at which or by whom Plaintiff has been or is being treated, counseled, diagnosed, examined, or otherwise provided assistance for any medical, physical or mental condition, related to Plaintiff's hearing loss or any other alleged disability for the time period January 1, 2001, to the present, including the name, address, and telephone number of each such person or entity, and a description of the nature of the person's or entity's business or practice. In addition, for each such person or entity state the date (and/or period of time) on or during which the Plaintiff received such treatment, counseling, diagnosis, examination, or other assistance and describe the nature of that treatment, counseling, diagnosis, examination or other assistance.

ANSWER:    See Answer To Interrogatory #5.

7.    State the name, address, telephone number, and title of each health care provider (including, but not limited to, physicians, hospitals, clinics, therapists, psychologists, psychiatrists, counselors, nurses, aides and the like) whom Plaintiff has consulted or by whom Plaintiff has been examined or treated for any injuries, illnesses, conditions or symptoms (including emotional distress) for which she is seeking damages in this case or which she claims

{S0521026.1 11/9/2006 JLD JLD}

3

was caused by any conduct of CMSC. For each provider, state the medical specialty of the health care provider; the illness, condition, complaint, injury, addiction, or symptoms for which consultation or treatment was sought; the diagnosis made and the prognosis given by the health care provider; the date(s) of each visit to or treatment by the health care provider; and the treatment prescribed by the health care provider.

ANSWER:    See Answer To Interrogatory #5.

8.    Excluding expert witnesses, identify each and every witness Plaintiff intends to call at the trial of this matter, and for each person so identified, describe in detail the anticipated subject matter of that person's testimony.

ANSWER:    Unknown at this time. Investigation continues. Plaintiff reserves the right to supplement.

9.    Identify each person whom Plaintiff may or will call as an expert witness at trial, with whom Plaintiff has consulted or will consult regarding the matters alleged in this action, or whose testimony Plaintiff expects to introduce in support of or in opposition to a motion for summary judgment. For each such expert witness: state the person's complete name, business address, and telephone number; state the subject matter on which the expert witness is expected to testify; describe in detail the substance of, and state the bases and grounds for, all facts and opinions about which the expert witness is expected to testify; describe (and for documents, identify) all information the expert considered in reaching his or her opinion(s); state the mental impressions and opinions held by the expert and facts known to the expert that related to, or form the basis of, the mental impressions and opinions held by the expert; identify each document that supports the substance of the facts or opinions about which the expert witness is expected to

{S0521026.1 11/9/2006 JLD JLD}                    4

testify; identify each document that was provided to the expert for use in this action and any document the expert intends to use in providing any opinion; and identify each document that the expert witness has prepared (or that has been prepared at the direction of the expert witness) which summarizes the facts or opinions about which the expert witness is expected to testify.

ANSWER:    Plaintiff will provide expert witness information in accordance with the Court Scheduling Order.

10.    For each expert witness identified in Interrogatory No. 8 above, describe in detail the qualifications of the expert witness and identify all documents related in any way thereto; identify all publications the expert has authored or co-authored; state the compensation to be paid to the expert and the calculation of such compensation; and identify all cases in which the expert has testified either at trial, by deposition, or by affidavit, including name, jurisdiction, case number, and party for whom the expert testified.

ANSWER:    Plaintiff will provide expert witness information in accordance with the Court Scheduling Order.

11.    Describe in detail the nature and extent of the damages or injuries Plaintiff claims to have suffered, and state the amount of damages or other monetary relief claimed by or on behalf of Plaintiff in this lawsuit and each component part thereof (including, *but not limited to*, damages or other monetary relief claimed for alleged unpaid overtime compensation, other alleged wages lost, alleged emotional distress damages, alleged liquidated damages, alleged attorney's fees, alleged costs, and other alleged lost or diminished employee benefit, or other element of any loss or other monetary relief claimed by each of them as of the date she answers these Interrogatories).  With respect to each type of damages sought, please:

a.    State the amount claimed, the nature of the damage claim (*e.g.*, unpaid overtime compensation, lost wages, emotional distress, liquidated

{S0521026.1  11/9/2006 JLD JLD}

damages, attorney's fees, costs, etc.) and describe how the amounts claimed and each component part thereof were (or are to be calculated), including, *but not limited to*, each figure used (or to be used) in making each calculation;

b.    State the full name, business and residence address and telephone number of each person who made, or participated in making, each calculation; and

c.    Identify each document containing, referring, or relating to each calculation or to the numbers or figures used in making it and each document which relates in any other way to the amounts claimed.

ANSWER:    Unknown at this time. Investigation continues. Plaintiff reserves the right to supplement.

12.    Is Plaintiff claiming damages in this case for physical or mental injuries relating to the accident that occurred on September 28, 2005? If so, describe in detail all such injuries for which Plaintiff is claiming compensation in this case.

ANSWER:    Yes,    See Medical Records produced in Response To Request For Production of Documents.

13.    Identify each and every person who has knowledge of the damages allegedly suffered as a result of the acts complained of in the Complaint, and for each such person, describe the facts regarding the damages allegedly suffered about which the person has or is believed to have knowledge.

ANSWER:    See Attached List.

14.    Describe in detail all of Plaintiff's income and any other source of money or living expenses, since September 28, 2005, including, *but not limited to*, any income received from any worker's compensation program, employment by other employers, work as an independent contractor or broker, self-employment, grants, loans, welfare payments, public aid,

benefits under private insurance policies, disability payments, social security payments, unemployment compensation, and support received from any other source, including relatives, except for wages from CMSC. Identify each source, state the total amount of each payment from each source identified, and state the date(s) of each such payment.

ANSWER: From September 28, 2005 to June 1, 2006 Plaintiff received workers' compensation payments of $525 every two weeks. From June 1, 2006 through August 15, 2006, Plaintiff received $369 in food stamps per month and $249 in cash as temporary assistance. From August 15, 2006, through October 15, 2006, Plaintiff received $525 ever two weeks as workers' compensation. Since October 15, 2006, Plaintiff received $369 in food stamps and $249 in cash as temporary assistance.

15.     Describe in detail each of Plaintiff's inquiries regarding, or attempts to obtain, employment since September 28, 2005, including, but not limited to, a description of the employer, wages, shift, position, duties, employee benefits, applications made, job offers received, rejections received, correspondence regarding such inquiries or attempts to obtain employment, and the date on which Plaintiff left the employer and the specific reason(s) Plaintiff left this employer, if applicable. If Plaintiff has been unable to work full-time at any time since September 28, 2005 due to ill health, disability, injury, schooling or training, specify the dates on which she was unable to work, the reasons therefor, whether she sought medical attention for any condition that prohibited her from working, where she was treated and by whom. In addition, identify all persons who have knowledge as to the information requested in this Interrogatory.

ANSWER: Plaintiff made oral application to Illinois School for Deaf as position of substitute teacher sometime in October 2006. No position was available. Plaintiff suffers from

depression and post-traumatic stress disorder. Medical records from Dr. Packman have been requested and have not been received.

16.    Identify by name, address and telephone number each and every person, firm, corporation or other entity by whom Plaintiff has been employed (or for whom she has performed any work) since September 28, 2005 (including self-employment and work as an independent contractor or consultant), and for each, state the dates of Plaintiff's employment by that employer (or the period of time she worked as an independent contractor or consultant) and the rate of pay and other compensation, commission or benefits she received from each person, firm, corporation or other entity.

ANSWER: Plaintiff has not worked since the accident.

17.    Identify each person who assisted Plaintiff in answering any of the foregoing Interrogatories, and with respect to each, state with which Interrogatories the person assisted.

ANSWER:    Kim Wallis.

18.    Separately for each Interrogatory, identify each and every document that was referred to, used for, or relied upon in the preparation of (or that otherwise relates to, supports, or tends to support the facts and allegations contained in) the answer to that Interrogatory; state the name, title or position, and business and residential addresses and telephone numbers for each and every person who provided written or oral statements or information for, was consulted about, or participated in preparing Plaintiff's answer to that Interrogatory; describe the information provided by each such person and the nature of the person's involvement in the

preparation of the answer to the Interrogatory; and identify all documents containing or relating

to each such statement or information provided by each such person.

ANSWER:    Kim Wallis.


KIMBERLY WALLIS, Plaintiff


By:_____
   One Of Her Attorneys

Sorling, Northrup, Hanna,
 Cullen & Cochran, Ltd.
R. Gerald Barris and John
 A. Kauerauf, Of Counsel
607 East Adams, Suite 800
P.O. Box 5131
Springfield, IL 62701
217-544-1144
rgbarris@sorlinglaw.com

**PROOF OF SERVICE**

The undersigned hereby certifies that a copy of the foregoing document was served by placing same in a sealed envelope addressed:

MCGUIREWOODS LLP
Joel H. Spitz
Michael R. Phillips
John C. Gardner
77 W. Wacker Dr., Suite 4100
Chicago, IL 60601


and by depositing same in the United States mail in Springfield, Illinois, on the _____ day of November, 2006, with postage fully prepaid.


_____

**A.**

**Family and Friends:**

Kimberly Wallis
325 North Main Street, #5
Virginia, IL 62691

Pauline Cameron
3296 Mayfield Avenue
Alton, IL 62002

Misty Wallis
2815 Fernwood Street
Alton, IL 62002

Mary Wallis
515 Wilson Street
Carlinville, IL 62626

Junior Wallis
8785 Drew Road
Plainview, IL 62685

Guido Luis Bron
817 North 10th Street
St. Joseph, MO 64501

Tonya Richardson (Logsdon)
10154 S. Beardstown Drainage Road
Beardstown, IL 62618

Family and Friends have or may have knowledge regarding Kim Wallis' injuries, recovery, medical treatment, employment and sexual harassment complaints against Ishmael Rivera at Cargill Meat Solutions Corporation, Kim's ability to communicate with others and effects of Kim's injuries and unemployment.

**Cargill Employees, Former Employees and Witnesses:**

Fred Ross
Former Production Supervisor
1107 Monroe
Beardstown, IL 62610

{S0521365.1 10/25/2006 JLD JLD}

Scott Thornton
Line Supervisor
Cargill Meat Solutions Corporation
1011 Garm Avenue
Beardstown, IL 62618

Craig Diebold
Technical Service Manager
Cargill Meat Solutions Corporation
1011 Garm Avenue
Beardstown, IL 62618

John Curry
Former Training Instructor
1042 East Morton Avenue
Jacksonville, IL 62650

Ishmael Rivera
Former Production Employee
25 Welch Wood Circle, Apt 25
Beardstown, IL 62618

Stacy Garcia
Line Supervisor
Cargill Meat Solutions Corporation
1011 Garm Avenue
Beardstown, IL 62618

Junana Soto
Production Employee
Cargill Meat Solutions Corporation
1011 Garm Avenue
Beardstown, IL 62618

Terry Cagle
Production Lead
Cargill Meat Solutions Corporation
1011 Garm Avenue
Beardstown, IL 62618

Sam Ngliardy
Cut Floor Manager
Cargill Meat Solutions Corporation
1011 Garm Avenue
Beardstown, IL 62618

{S0521365.1  10/25/2006 JLD JLD}

Susan Young
Human Resources Manager
Cargill Meat Solutions Corporation
1011 Garm Avenue
Beardstown, IL 62618

Joe Nevel
Former Assistant Human Resources Manager
Cargill Meat Solutions Corporation
1011 Garm Avenue
Beardstown, IL 62618

John Wrestler
Cargill Meat Solutions Corporation
1011 Garm Avenue
Beardstown, IL 62618

Marlene McGlauchlern
Former Cargill Employee
1018 Grove Street, Apt. #9
Jacksonville, IL

Cargill Meat Solutions Corporation employees and former employees have or may have knowledge regarding Kim Wallis' employment with Cargill Meat Solutions, her work performance, her work duties, her complaints regarding Ishmael Rivera, Cargill's remedial efforts regarding Mr. Rivera, the facts and circumstances of Kim's injuries, Kim's ability to communicate with others, and Cargill's policies and practices

**Medical Providers:**

Dr. Mark Green
Passavant Area Hospital
1600 West Walnut Street
Jacksonville, IL 62650

Hospital Personnel Involved In Care
Passavant Area Hospital
1600 West Walnut Street
Jacksonville, IL 62650

Dr. Richard Brown
Springfield Clinic
1025 South Seventh Street
Springfield, IL 62704

Dr. Cecile Becker

{S0521365.1 10/25/2006 JLD JLD}

Springfield Clinic-Neurology
800 North First Street
Springfield, IL 62702

Dr. Wayne A. Stillings
Kare & Therapy, Inc.
1034 South Brentwood Blvd., Suite 516
St. Louis, MO 63117

Dr. Paul M. Packman
Paul M. Packman, Inc.
1034 South Brentwood Blvd., Suite 1180
St. Louis, MO 63117

Dr. Michael E. Beatty
Southwestern Illinois Plastic & Hand Surgery
2 Sunset Hills Professional Centre
Edwardsville, IL 62025

Dr. Robert Gordon
Midwest Occupational Heath Associates
901 West Morton Avenue, Suite 16A
Jacksonville, IL 62650

Dr. Marshal Robert
Paul Hauk, P.A.
225 South Congress
Rushville, IL 62681

Dr. Larry Eisenman -- Neurology
Washington University Physicians
P.O. Box 502432
St. Louis, MO 63150

Scott L. Marshall, P.T.
Physical Therapists Clinic, Ltd.
1440 West Walnut, Suite #4
Jacksonville, IL 62650

Donna C. Canavan, OTR/L, CHT
SIU School of Medicine
Hand Therapy Center
747 North Rutledge Street
P.O. Box 19653
Springfield, IL 62794

{S0521365.1 10/25/2006 JLD JLD}

Susan Milam, OTR/L, CHT
Apex Certified Hand Therapy
2 Sunset Hills Professional Center
Edwardsville, IL 62065

Sarah D. Culbertson Memorial Hospital
238 South Congress
Rushville, IL 62681

Anderson Hospital
6800 State Route 162
Maryville, IL 62062

Barnes-Jewish Hospital
P.O. Box 500071
St. Louis, MO 63150

Medical Providers have or may have knowledge regarding Kim's injuries, treatment and
recovery; her hearing impairment and ability to communicate with others, her ability to work, her
mental distress as a result of the sexual harassment, injuries, and unemployment.

# EXHIBIT B

## IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF ILLINOIS
## SPRINGFIELD DIVISION

KIMBERLY WALLIS              )
                                  )
             Plaintiff,              )
                                  )
      vs.              )    NO. 3:06-cv-03147-RM-CHE
                                  )
CARGILL MEAT SOLUTIONS              )    Judge Richard Mills
CORPORATION, a Delaware Corporation,     )    Magistrate Judge Charles H. Evans
                                  )
             Defendant.              )

## DEFENDANT'S AMENDED ANSWER AND ADDITIONAL DEFENSES

Defendant, Cargill Meat Solutions Corporation (hereinafter, "CMSC"), by and through

its attorneys, for its Amended Answer and Additional Defenses to the Complaint filed by

Plaintiff, Kimberly Wallis ("Plaintiff"), states as follows:

1.      This action is brought to remedy discrimination on the basis of sex based upon
sexual harassment, in violation of Title VII of the Civil Rights Act of 1964, as
amended, 42 U.S.C. Section 2000e *et seq.* ("Title VII").  This action is also
brought to redress violations of the Americans with Disabilities Act of 1990
("ADA"), specifically, the failure to accommodate in violation of the ADA, 42
U.S.C. Section 12101, *et. seq.*

**ANSWER**:  CMSC denies the allegations made and contained in Paragraph No. 1, except

to admit that this action purports to bring causes of action under Title VII of the Civil Rights Act

of 1964 and the Americans with Disabilities Act of 1990.

2.      Jurisdiction of this Court is founded upon 28 U.S.C. §§ 1331 and 1343 (1), (2),
(3) and (4) and the aforementioned statutory provisions. Injunctive and
declaratory relief and damages are sought pursuant to 42 U.S.C. §2000e-5(f) and
(g) along with monetary relief for damages.

**ANSWER**:  CMSC denies the allegations made and contained in the first sentence of

Paragraph No. 2, except to admit that jurisdiction is proper in this Court.  CMSC admits the



1

allegations made and contained in the second sentence of Paragraph No. 2 but denies that

Plaintiff is entitled to any such relief.

3.     At all times mentioned in the Complaint, the Defendant was an employer and the Plaintiff was an employee under Sections 701(b) & (f) of 42 U.S.C. § 2000e (b) & (f) and 42 U.S.C. § 12111.

**ANSWER**:  Admitted.

4.     Pursuant to 28 U.S.C. 1391(b), venue is proper within the Springfield Division of the Central District of Illinois because the unlawful practices complained of herein occurred in Cass County, Illinois.

**ANSWER**:  CMSC denies the allegations made and contained in Paragraph No. 4, except

to admit that venue is proper in this Court.

5.     Plaintiff, KIMBERLY WALLIS, filed a charge of discrimination against Defendant CARGILL MEAT SOLUTIONS CORPORATION with the Equal Employment Opportunity Commission ("EEOC") and the Illinois Department of Human Rights on or about December 21, 2005, complaining of the acts of sexual harassment and ADA violations as alleged herein. (Attached hereto and incorporated herein as Exhibit 1 is a true and exact copy of said charge). On or about May 15, 2006, the United States Equal Employment Opportunity Commission notified KIMBERLY WALLIS of her right to institute this action by issuance of a "Notice of Right to Sue" on her charge. (Attached hereto and incorporated herein as Exhibit 2 is a true and exact copy of said Notice).

**ANSWER**:  CMSC denies the allegations made and contained in Paragraph No. 5, except

to admit that Plaintiff filed a charge of discrimination with the EEOC and the IDHR on or about

December 21, 2005 and received a notice of right to sue with respect to that charge on or about

May 15, 2006.

6.     Plaintiff, KIMBERLY WALLIS, is a female citizen of the United States. She has been employed by CARGILL MEAT SOLUTIONS CORPORATION in Cass County, Illinois, since March 1, 2004. Plaintiff is currently on temporary disability caused by the sexual harassment from her co-worker as alleged further in this Complaint. Plaintiff resides in Virginia, Illinois. At all times relevant hereto, Plaintiff has suffered from the disability of being profoundly deaf and this disability is unable to be corrected. Plaintiff's disability, affected and severely restricted Plaintiff's activities of daily living in that she has been substantially restricted in both home and work activities as follows:

2

    a.      Work Activities that were restricted:

          1.      She is unable to understand spoken directions and needs to read lips in order to understand directions;

          2.      She is unable to understand explanations and discussions with her Supervisors concerning the investigation and decisions made by Defendant in response to her complaint of sexual harassment.

    b.      Home Activities that are restricted:

          1.      She is profoundly deaf and can only watch television with closed captioned.

          2.      She wears a hearing aid in her left ear and communicates with family, her children and friends by a combination of lip reading, assistance of sign language and speech.

**ANSWER:** CMSC admits the allegations made and contained in the first sentence of Paragraph No. 6. CMSC denies the allegations made and contained in sentences two and three of Paragraph No. 6, except to admit that CMSC employed Plaintiff at its Beardstown, Illinois pork processing facility from March 1, 2004 until on or about December, 2005. CMSC admits the allegations made and contained in the fourth sentence of Paragraph No. 6 on information and belief. CMSC is without information sufficient to confirm or deny the allegations made and contained in the fifth sentence Paragraph No. 6 and therefore denies the same, except to admit that Plaintiff suffers from a hearing impairment of unknown severity. CMSC is without information sufficient to confirm or deny the remaining sentences of Paragraph No. 6 and therefore denies the same, except specifically denies that Plaintiff was unable to communicate verbally with her supervisors.

    7.      Defendant, CARGILL MEAT SOLUTIONS CORPORATION operates a pork processing plant in Cass County, Illinois. At all times relevant hereto, Defendant acted by and through following Managerial Staff:

A.    Terry Cagle, was a lead man who would be responsible for supervising Plaintiff's work if a line supervisor was not at the scene of the work.

B.    Fred Ross, was a line supervisor for the line on which Plaintiff worked and was Plaintiff's direct supervisor.

C.    Scott Thornton was a line supervisor for another line at Plaintiff's place of work.

D.    Stacy Garcia was a supervisor in training of another line at Plaintiff's place of work.

E.    Sam (last name unknown) was a supervisor over Fred Ross at Plaintiff's place of work.

F.    Craig (last name unknown) was a supervisor over Fred Ross at Plaintiffs place of work.

G.    John Curry was a training instructor who Defendant called in sometimes to serve as a translator for Plaintiff and other deaf employees at Plaintiff's place of work.

**ANSWER:** Admitted.

## ALLEGATIONS COMMON TO ALL COUNTS

1-7.    Plaintiff repeats and realleges paragraphs 1-7 herein with the same force and effect as if fully set forth herein.

**ANSWER**: CMSC hereby incorporates its answers to Paragraph Nos. 1 through 7.

8.    Plaintiff was originally employed by CARGILL MEAT SOLUTIONS CORPORATION, as a transferor of meat products.

**ANSWER**: CMSC denies the allegations made and contained in Paragraph No. 8 and states that it hired Plaintiff into the position of Remove Blade Bone.

9.    Plaintiff was promoted by Defendant to the position of meat skinner in May 2005.

**ANSWER**: CMSC denies the allegations made and contained in Paragraph No. 9 and states that it transferred Plaintiff to the position of Butt Skinner on or about June 28, 2005.

10.    Meat skinners work in teams of three employees processing meat through three high speed cutting machines.

4

**ANSWER**: CMSC denies the allegations made and contained in Paragraph No. 10, except to admit that Paragraph No. 10 describes generally the job duties of Butt Skinners at CMSC's Beardstown facility.

11. Skinning requires the employees to pass meat into the aforementioned high speed cutting machines. The meat skinner's job is physically demanding and requires a great deal of concentration by the employee. The meat skinner's job is quite dangerous because there are no guards on the high speed cutting machines used by the meat skinners.

**ANSWER**: CMSC admits the allegations made and contained in the first sentence of Paragraph No. 11. CMSC denies the allegations made and contained in the second and third sentences of Paragraph No. 11, except to admit that the butt skinner machine does not contain a guard.

12. Because of the high speed of the processing operation, the meat skinner team members are required to rotate to a different machine every 30 minutes and to take a 15 minute break every hour.

**ANSWER**: CMSC denies the allegations made and contained in Paragraph No. 12, except to admit that butt skinners are expected to rotate machines every 30 minutes and are permitted to take periodic breaks.

13. At all times relevant hereto, Plaintiff performed her job duties as meat skinner in a manner considered acceptable by the Defendant and received positive performance reviews.

**ANSWER**: CMSC admits the allegations made and contained in Paragraph No. 13.

14. In July 2005, Ishmael Rivera ("Rivera") was assigned by Defendant to work with Plaintiff and another employee as a meat skinning team.

**ANSWER**: CMSC denies the allegations made and contained in Paragraph No. 14, except to admit that Rivera and Plaintiff were both first shift Butt Skinners as of July 2, 2005.

15. Beginning on the first day of Ishmael Rivera's assignment to Plaintiff's meat skinning team, and continuing on a daily basis thereafter, Rivera engaged in a

5

course of the following unwelcome and sexually offensive conduct directed at the Plaintiff because of her sex that was severe and pervasive and unreasonably affected the Plaintiff's ability to perform her job.

A.     Rivera made ongoing comments to the Plaintiff that he would be waiting for her in the parking lot before and after work.

B.     Rivera consistently told Plaintiff that he knew she wanted him.

C.     Rivera would grab her hands when she was working on a meat trimming machine.

D.     Rivera told her she had long hair and it was very sexy.

E.     When Plaintiff and Rivera would switch positions on the line, Rivera would place his hands on Plaintiffs hips.

F.     Rivera told the Plaintiff he could eat pussy very good.

G.     Even though employees were prohibited by Defendant from carrying cell phones on the line, Rivera would violate this rule and take photographs of Plaintiff and ask her to look at them.

H.     Rivera would tell Plaintiff that she looked good in tight blue jeans.

I.     Rivera would tell Plaintiff he would be waiting for her in the break room.

J.     If Plaintiff would not pay attention to Rivera or not respond to his remarks, Rivera would grab Plaintiff's hands, or start tossing meat, or refuse to switch machines at the end of 30 minutes which would cause severe emotional and physical distress to Plaintiff because she had to continue cutting and processing the pork for a longer period of time than the job could be safely done.

**ANSWER:** CMSC denies the allegations made and contained in Paragraph No. 15, except to admit that Plaintiff complained to management about Rivera taking a photograph of her and failing to rotate machines at appropriate times.

16.     Plaintiff made repeated complaints to the lead man, Terry Cagle, about Rivera's conduct and comments. Mr. Cagle never took any action to correct the situation and stop Rivera from harassing Plaintiff.

**ANSWER**: CMSC denies the allegations made and contained in Paragraph No. 16.

6

17.    After the harassment continued for approximately a month, the Plaintiff contacted Scott Thornton, a supervisor of another line. Mr. Thornton took Plaintiff off her line and escorted her to Fred Ross, her supervisor who was then in the break room. At that time Plaintiff explained in detail Rivera's actions and how it was affecting her ability to perform her job safely. Ross and Thornton discussed the problem. No sign interpreter was provided and Plaintiff was not able to understand completely what the supervisors talked about. Ross told Plaintiff that he would take care of the problem and sent her back to the line. Later that afternoon, Ross called Rivera and Plaintiff together to his office. Ross told Rivera of Plaintiff s complaint and that he was going to write a report. Rivera denied Plaintiff's complaints and started talking quietly with Ross. Again, no sign interpreter was present and Plaintiff could not understand what was being said. Ross told Plaintiff that the harassment would stop.

**ANSWER**:  CMSC denies the allegations made and contained in Paragraph No. 17, except to admit that Plaintiff complained to Scott Thornton about Rivera taking a photograph of her, that Thornton referred her complaint to Fred Ross and that Ross addressed the incident, including by disciplining Rivera.

18.    Rivera's harassment of Plaintiff did not stop and he continued to make repeated comments similar to those alleged in paragraph 15 above. Plaintiff complained repeatedly to her supervisor, Fred Ross. Finally, sometime in September 2005, another meeting was held attended by Fred Ross and his supervisor, Craig (last name unknown), Rivera and Plaintiff. John Curry attended and attempted to sign and interpret to Plaintiff what the men were discussing. Mr. Curry repeatedly apologized to Plaintiff about his inability to sign quicker. John Curry told Plaintiff he could not keep up with the conversation and could only summarize what was being said by Rivera, Ross or Craig. Ross or Craig told Plaintiff they would pay more attention to what went on and they would watch the line more.

**ANSWER**:  CMSC denies the allegations made and contained in the first and second sentences of Paragraph No. 18, except to admit that after Plaintiff complained to management about Rivera failing to properly rotate, a meeting was held among Ross, Rivera, Plaintiff, Juana Soto, Craig Diebold and John Curry to address the issue of rotation and a rotation schedule was established.

19.    After the meeting Rivera continued his practice of making harassing comments to Plaintiff, refusing to switch machines on line, grabbing her hand and taking meat out of the line causing her to be distracted.

7

**ANSWER**: CMSC denies the allegations made and contained in Paragraph No. 19.

20.     On September 28, 2005, Rivera continued his practice of making harassing comments and refused to switch positions. Plaintiff refused to look at Rivera. Rivera then became mad because Plaintiff would not acknowledge him and began to throw meat at her. Rivera then refused to switch machines after 30 minutes. No supervisor was on Plaintiff's line so Plaintiff called to a supervisor in training, Stacy Garcia, who started to walk over toward her. Because of Rivera's refusal to switch machines and his other antics, Plaintiff was distracted. All of this commotion and activity distracted Plaintiff and her hand was caught in the cutting machine she operated. Plaintiff lost her thumb and a finger on her left hand when her hand was caught in the machine. The thumb has been reattached but cannot be used.

**ANSWER**:  CMSC denies the allegations made and contained in Paragraph No. 20, except to admit that on September 28, 2005 Plaintiff complained to Stacy Garcia that Mr. Rivera was not rotating machines and shortly thereafter suffered an injury when her left hand was caught in the butt skinner machine she was operating.

21.     Plaintiff at all times herein was forced to endure a sexually hostile work environment perpetrated by Rivera. Despite repeated complaints by Plaintiff to her and Rivera's supervisors, Defendant took no disciplinary or other action to prevent further harassment by Rivera.

**ANSWER**:  CMSC denies the allegations made and contained in Paragraph No. 21.

22.     As a direct and proximate result of Defendant's conduct, Plaintiff has lost a finger on her left hand and has been forced to endure severe and prolonged mental anguish, humiliation, embarrassment, extreme damage to her professional and personal reputation, damage to her career opportunities, damage to her physical health and monetary losses associated with her employment all of which have affected seriously the psychological well-being of the Plaintiff.

**ANSWER**:  CMSC denies the allegations made and contained in Paragraph No. 22, except to admit that Plaintiff suffered an injury to her left hand on September 28, 2005.

23.     Defendant's discriminatory treatment of the Plaintiff as described above has been intentionally taken against the Plaintiff by the Defendant.

**ANSWER**:  CMSC denies the allegations made and contained in Paragraph No. 23.

8

## COUNT I

1-23. Plaintiff repeats and realleges paragraphs 1-23 with full force and effect as if fully set forth herein.

**ANSWER**: CMSC hereby incorporates its answers to Paragraph Nos. 1 through 23.

24.     At all times relevant herein, the Defendant CARGILL MEAT SOLUTIONS CORPORATION acted by and through its employees and agents, Ishmael Rivera, Terry Cagle, Fred Ross and Craig (last name unknown).

**ANSWER**: CMSC denies the allegations made and contained in Paragraph No. 24,

except to admit that CMSC acts through its authorized officers and agents.

25.     By the above acts, Defendant, CARGILL MEAT SOLUTIONS CORPORATION, has violated Title VII by discriminating against Plaintiff because of her sex by creating an unwelcome sexually hostile work environment that was severe and pervasive and affected the Plaintiff's ability to perform her job and seriously affected the psychological well-being of the Plaintiff.

**ANSWER**: CMSC denies the allegations made and contained in Paragraph No. 25.

26.     Defendant's acts have been with malice and reckless disregard for Plaintiff's federally protected civil rights.

**ANSWER**: CMSC denies the allegations made and contained in Paragraph No. 26.

27.     Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages as a result of Defendant's discriminatory practices unless and until this Court grants relief.

**ANSWER**: CMSC denies the allegations made and contained in Paragraph No. 27.

## COUNT II

1-27. Plaintiff repeats and realleges paragraphs 1-27 of Count I as and for paragraphs 1-27 of Count II with the same force and effect as if fully set forth herein.

**ANSWER**: CMSC hereby incorporates its answers to Paragraph Nos. 1 through 27.

28.     At all times relevant hereto, Plaintiff was profoundly deaf that permanently affected and severely restricted her activities of daily living, including work and home activities all as previously alleged herein.

9

**ANSWER**:  CMSC is without information sufficient to confirm or deny the allegations made and contained in Paragraph No. 28 and therefore denies the same, except to admit that Plaintiff suffers from a hearing impairment of unknown severity.

29.    Defendant was aware of the Plaintiff's disability.

**ANSWER**:  CMSC denies the allegations made and contained in Paragraph No. 29, except to admit that it knew that Plaintiff suffered from a hearing impairment of unknown severity.

30.    From the date of her employment with the Defendant, Plaintiff was fully capable of and could fully perform the essential job junctions of her jobs as transferring product and/or meat skinner.

**ANSWER**:  Admitted.

31.    Defendant refused to accommodate the Plaintiffs disability and refused to provide the Plaintiff with a qualified translator to assist her in reporting sexual harassment by Ishmael Rivera or assist her in understanding what policies or actions Defendant would take to stop this harassment.

**ANSWER**:  CMSC denies the allegations made and contained in Paragraph No. 31.

32.    Defendant violated the ADA by refusing to provide the Plaintiff with reasonable accommodation of her disabilities and perceived disabilities in violation of Title VII of the ADA, 42 U.S.C. § 12111, *et seq.*

**ANSWER**:  CMSC denies the allegations made and contained in Paragraph No. 32.

33.    Defendant's acts have been intentional with malice and reckless disregard for Plaintiff's federally protected civil rights.

**ANSWER**:  CMSC denies the allegations made and contained in Paragraph No. 33.

34.    Plaintiff is now suffering and will continue to suffer irreparable injury in monetary damages as a result of Defendant's discriminatory practices unless and until this Court grants relief.

**ANSWER**:  CMSC denies the allegations made and contained in Paragraph No. 34.

## AFFIRMATIVE AND ADDITIONAL DEFENSES

**First Defense**

Plaintiff's Complaint fails to state a claim upon which relief can be granted.

**Second Defense**

All actions by CMSC with regard to Plaintiff were lawful and made in good faith compliance with applicable provisions of law, rules and regulations, and were not impermissibly based upon any unlawful consideration or otherwise the result of any unlawful motive.

**Third Defense**

Plaintiff is not entitled to recover punitive damages because CMSC did not engage in a discriminatory practice with malice or with reckless indifference toward Plaintiff.

**Fourth Defense**

To the extent Plaintiff suffered any damages, such damages were caused by Plaintiff's own actions or the actions of persons outside of CMSC's control.

**Fifth Defense**

CMSC asserts that any damages awarded herein, for which all liability is denied, are subject to the limits imposed by the Civil Rights Act of 1991, 42 U.S.C. § 1981a.

**Sixth Defense**

To the extent that Plaintiff's claims are based on actions allegedly taken by persons other than CMSC, its agents, or CMSC employees acting outside of the scope of their employment with the company, CMSC is not responsible for such actions.

11

**Seventh Defense**

To the extent that Plaintiff's claims concern matters occurring more than 300 days before the filing of her charge of discrimination, her claims are barred, in whole or in part, by the applicable statute of limitations and/or by other time limitations imposed by law.

**Eighth Defense**

To the extent that Plaintiff asserts claims outside the scope of her charges of discrimination, those claims are barred by her failure to exhaust administrative remedies.

**Ninth Defense**

To the extent that Plaintiff attempts to recover damages for work-related injuries, Plaintiff's claims are preempted, in whole or in part, by the Illinois' Workers' Compensation Act.

**Tenth Defense**

To the extent that Plaintiff attempts to recover damages for work-related injuries, Plaintiff's claims are barred under the election of remedies doctrine as a result of her previous receipt of worker's compensation benefits.

**Eleventh Defense**

Plaintiff is barred from recovering damages for the injuries she suffered as a result of her September 28, 2005 accident to the extent that she cannot demonstrate that the accident was proximately caused by CMSC's purported discriminatory actions.

**Twelfth Defense**

Plaintiff unreasonably failed to take advantage of CMSC's preventative and corrective measures or to otherwise avoid harm within the meaning of *Faragher v. City of Boca Raton*, 524 U.S. 775 (1998) and *Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742 (1998).

12

**Thirteenth Defense**

      Rivera's alleged conduct toward Plaintiff was not sufficiently severe and pervasive so as to create a hostile working environment within the meaning of Title VII.

**Fourteenth Defense**

      Rivera's alleged conduct toward Plaintiff was not based upon sex so as to be actionable under Title VII.

**Fifteenth Defense**

      Rivera's alleged conduct toward Plaintiff was not unwelcome or subjectively offensive so as to be actionable under Title VII.

**Sixteenth Defense**

      The accommodations allegedly requested by Plaintiff were unnecessary and unreasonable.

**Seventeenth Defense**

      Plaintiff failed to request workplace accommodations, and her claims regarding CMSC's alleged failure to accommodate her alleged disability are barred by her failure to engage in the interactive process.

**Eighteenth Defense**

      CMSC reserves the right to assert any additional or affirmative defense that may become apparent or available during discovery of this matter.

      WHEREFORE, Defendant, Cargill Meat Solutions Corporation, respectfully requests that judgment be entered in its favor and against Plaintiff, Kimberly Wallis, that it be awarded all costs and reasonable attorney's fees incurred in the defense of this action and such other and further relief as the Court deems proper.

Dated: February 7, 2007                    /s/ Michael R. Phillips
                                           MCGUIREWOODS LLP
                                           Joel H. Spitz
                                           Michael R. Phillips
                                           John C. Gardner
                                           77 W. Wacker Dr., Suite 4100
                                           Chicago, IL 60601
                                           (312) 849-8100 (telephone)
                                           (312) 849-3690 (fax)
                                           jspitz@mcguirewoods.com
                                           mphillips@mcguirewoods.com
                                           jgardner@mcguirewoods.com

14